# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| **DAVID LEWIS BEYSER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 7:11-CV-01048-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **COMMISSIONER OF SOCIAL** | } | |
| **SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff David Lewis Beyser ("Plaintiff") brings this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability, Disability Income Benefits ("DIB") under Title II, and Supplemental Security Income ("SSI") benefits under Title XVI.  *See* 42 U.S.C. §§ 405(g), 1383(c).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

## I.  Proceedings Below

Plaintiff filed his applications for a period of disability, DIB, and SSI on April 1, 2008.  (R. 71).  Plaintiff alleged a disability onset date of March 9, 2008.  (R. 71).  Plaintiff's applications were initially denied on June 30, 2008. (R. 77).  Plaintiff then requested a hearing before Administrative Law Judge ("ALJ") on July 29, 2008.  (R. 88).  Plaintiff's request was granted, and a hearing was held before ALJ Jerome L. Munford on October 14, 2009 (R. 31-70).  Plaintiff was not accompanied or represented by an attorney at the hearing. (R. 33). Plaintiff submitted records from several physicians from whom he had sought treatment from August 2007 through June 2008. (R. 237, 252).

The Disability Determination Service ("DDS") also requested medical, psychiatric, physical and mental  Residual Functional Capacity ("RFC") evaluations of Plaintiff. (R. 259, 265, 272, 294). Based on these records and evaluations, the ALJ found Plaintiff suffered from the"severe" impairments of mild degenerative disc disease, seizure disorder, left upper extremity limitation, adjustment disorder with depressed mood, and cannabis abuse. (R. 25).  In his January 21, 2010 decision, the ALJ determined that Plaintiff was not eligible for a period of disability or DIB because he had not been under a disability within the meaning of §§ 216(I) and 223(d), nor for SSI because he was not under a disability within the meaning of § 1614(a)(3)(A) of the Act. (R. 26). The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner.  (R. 1).

At the time of the hearing, Plaintiff was 48-years old and had an eighth grade education.  (R. 41).  Plaintiff had previously worked as a maintenance worker, asbestos remover, electrician's assistant, truck driver, and laborer. (R. 180).  Plaintiff alleged limitations that were due to a plastic plate inserted in his head in 1977 that caused seizures; a left arm injury due to a chainsaw accident in 1998 that caused moderate disassociation of feeling in his thumb, index and forefinger; and back problems that occurred "on and off for years." (R. 172). Plaintiff testified the pain from his back injury was the main reason forcing him to quit his job in 2008. (R. 57).

Medical records indicate that on August 5, 2007, Plaintiff was admitted to DCH Regional Medical Center after suffering chest pains. An electrocardiogram was within normal limits and Plaintiff did not report a history of seizures or back problems at the time. (R. 240-44).

On March 17, 2008, eight days after his alleged onset date of disability, Plaintiff visited Dr. Kitt Klaiss at Whatley Health Services complaining of pain in his right heel, radiating up his leg and into his hip. (R. 256). Plaintiff informed Dr. Klaiss that he had experienced pain for "the last several

weeks to a few months" and that the pain was worse in the morning and with heavy activity or work. (R. 256). On examination, Dr. Klaiss observed a decreased range of motion in Plaintiff's lumbar spine with markedly positive straight leg raising. (R. 256). Plaintiff informed Dr. Klaiss of the motor vehicle accident that had resulted in the plate in his head. (R. 256). Plaintiff stated that he "used to have seizures but hasn't had any in at least five years." (R. 256). Dr. Klaiss assessed plaintiff with back pain and possible herniated disc. Plaintiff was given a sample of Lyrica and prescriptions for Naprosyn, Ultram, and Baclofen and asked to return in 4-6 weeks if problems continued. (R. 256).

On April 9, 2008 Plaintiff returned to Dr. Klaiss with complaints of persisting back pain. (R. 253).  Plaintiff informed Dr. Klaiss he had experienced "a couple of seizures" in the past month. (R. 253). Dr. Klaiss' assessment of Plaintiff was arthritis with chronic back pain. (R.  253).  Dr. Klaiss also noted that Plaintiff complained of shortness of breath. (R. 253). Plaintiff's use of Naprosyn was discontinued and he was given a sample of Mobic as well as a prescription for Tegretol. (R. 253). Noting that Baclofen and Ultram were helpful, Dr. Klaiss encouraged Plaintiff to increase his dosage of Ultram. (R. 253).  At this time, Plaintiff notified Dr. Klaiss he had filed for a period of disability, DIB, and SSI. (R. 253).

On June 9, 2008, Plaintiff visited Dr. James M. Saxon at Indian Hills Medical Center for a medical evaluation requested by the DDS. (R. 260). Dr. Saxon reported that Plaintiff claimed to have suffered three or four day-time seizures during the past twelve months, resulting in slight urinary incontinence, tongue biting, post event confusion, and related retrograde amnesia. (R. 260). Plaintiff also reported that in that past he had long-term EEG monitoring which revealed nighttime seizures. (R. 260).  Plaintiff claimed that because of night-time seizures, he suffered from headaches, fatigue, and apneic episodes. (R. 260). Dr. Saxon also examined Plaintiff's left arm impairment resulting from the 1999 chain-saw accident and noted that according to physical therapy records,

Plaintiff's left handgrip was about half his right one. (R. 260). Dr. Saxon noted Plaintiff's back pain had been on-going for at least six months, with pain severity around five to six on a scale of ten, further intensified with lifting. (R. 260). During the examination, Plaintiff told Dr. Saxon that while he was working at Mercedes his back had begun to hurt and he'd been given a light-duty profile by his physician, but his employer told him they had no light-duty jobs for him. (R. 260).

Upon physical examination, Dr. Saxon noted that Plaintiff had some lower back tenderness and walked with a mild limp, but had the ability to squat and rise and walk on heels and toes. (R. 261). Plaintiff's physical examination also revealed diminished pinprick sensation on his left forearm. (R. 261). X-rays of Plaintiff's lumbar spine revealed a mild loss of disc space height at L4-5 and L5-S1; minimal osteophytes at L4-5; and mild facet degenerative changes in the lower two lumbar levels. (R. 264). There was preservation of vertebral body height and the remainder was within normal limits. (R. 264). Based on his examination, and the medical records provided by DDS, Dr. Saxon concluded Plaintiff suffered from chronic mechanical lower back pain and seizure disorder which resulted in some limitations that would prohibit him from performing heavy manual labor, driving, working at heights, or working around machinery. (R. 261).

On June 11, 2008, Plaintiff was seen by Dr. Heath R. Patterson for a psychological evaluation upon referral by the DDS. (R. 266-71). Dr. Patterson noted that Plaintiff's primary complaints were physical in nature. (R. 266). During the interview, Plaintiff reported experiencing several seizures per week. (R. 271). Based upon his interview with Plaintiff, Dr. Patterson concluded Plaintiff was able to appropriately converse and focus on instructions to complete a task, but as instructions became more multi-part in nature, Plaintiff would experience difficulty. (R. 269). Dr. Patterson also noted Plaintiff's abstract reasoning skills appeared to be limited, but noted no clinical impairment. (R. 269). Both long and short-term memory were functioning below normal limits, but

significant impairment was not noted. (R. 269).  Dr. Patterson concluded that Plaintiff's level of intellectual functioning was at the low average range. (R. 270). Dr. Patterson diagnosed Plaintiff with adjustment disorder with depressed mood and chronic cannabis abuse. (R. 270).  Dr. Patterson concluded that Plaintiff's symptoms of mood disorder appeared to be linked to stressors related to his physical condition and although his psychological symptoms were situational in nature, they did cause mild to moderate functional impairment. (R. 270).  Overall, Dr. Patterson concluded Plaintiff's psychiatric symptoms did not preclude him from obtaining or maintaining gainful employment. (R. 270).  Specifically, he found Plaintiff's symptoms did not limit his ability to understand and remember directives, respond appropriately to supervision, or complete two-step tasks.  (R. 270-71).

Dr. Robert Estock, a non-examining psychological consultant from the state agency, completed a mental RFC assessment of Plaintiff on June 30, 2008. (R. 294-96). Dr. Estock found Plaintiff capable of carrying out simple instructions and maintaining attention and concentration for two hours at a time. (R. 296). However, he also concluded Plaintiff needed contact with the public to be casual, criticism to be non-confrontational, and changes in work setting to be gradual. (R. 296).

Based on Plaintiff's medical records and testimony given during the hearing, the ALJ determined that Plaintiff was not eligible for DIB or SSI because he was not disabled under §§ 216(I), 223(d), or 1614(a)(3)(A) of the Act. (R. 26). Plaintiff filed a request for review of the ALJ's decision on February 17, 2010. (R.6).  In support of his request, Plaintiff submitted new evidence for consideration consisting of medical records from an admission to Northport Medical Center on November 2, 2010 for depression, suicidal thoughts, as well as treatment for his neck due to

5

shooting pains from behind the plastic plate in his head. (R. 335-38).  On February 24, 2011, the Appeals Council declined to review the ALJ's decision based upon this new evidence. (R. 1).

## II.  The ALJ Decision

To establish that a claimant is entitled to a period of disability and DIB, the claimant first bears the burden of proving that his disability began during the time that he was insured by Social Security.  20 C.F.R. § 404.131.  Thereafter, disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1 *et. seq*.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits his ability to perform basic work activities.  Absent such impairment, the claimant may not claim disability.  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  If the claimant is determined to be capable of

6

performing past relevant work, then he is deemed not disabled.  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.

In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do.  20 C.F.R. §§ 404.1512(g), 404.1560(c).  In making this determination, the Commissioner will use the Medical-Vocational Guidelines ("MVGs") in Appendix 2 of Part 404 of the Regulations.  The MVGs will direct findings of "disabled" or "not disabled" when all of the claimant's vocational factors and RFC match a category listed in the Appendix.  When the claimant's vocational factors and RFC do not match a listed category (the claimant is unable to perform the full range of work for his RFC), the ALJ will consider the testimony of a vocational expert ("VE").

In this case, the ALJ determined that Plaintiff: (1) met the insured status requirements of the Act through December 31, 2012; (2) did not engage in substantial gainful activity since his claimed onset date of disability, March 9, 2008; (3) had the severe impairments of mild degenerative disc disease, seizure disorder, left upper extremity limitation status/post chainsaw accident, adjustment disorder with depressed mood, and cannabis abuse; but (4) had no impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 25).  The ALJ stated the following with regard to Plaintiff's RFC:

> The claimant retains the residual functional capacity to perform light work which allows low average IQ, occasional bending, stooping, simple, repetitive, non-complex tasks; no unrestricted heights, no operation of hazardous machinery, no driving; and occasional push or pull with the left upper extremity.

(R. 25). The ALJ found that this RFC prevented Plaintiff from performing his past relevant work. (R. 25). The ALJ then relied on the testimony of a VE to conclude that there were a significant number of jobs in the national economy that Plaintiff could perform including hand packer, kitchen helper, fast food worker, and product assembler. (R. 26).

### III.  Plaintiff's Argument for Reversal

Plaintiff presents four arguments for reversing the decision of the ALJ.  First, Plaintiff contends that the ALJ failed to develop a full and fair record, especially in light of an unrepresented claimant. (Pl.'s Br. 7-11).  Plaintiff asserts that the ALJ failed in his special duty to develop the record when he did not "probe into, inquire of, and explore for all of the relevant facts." (Pl.'s Br. 10).  Second, Plaintiff argues that the ALJ committed error by failing to properly consider his subjective complaints of pain and other symptoms. (Pl.'s Br. 12-16).  Third, Plaintiff argues that the ALJ committed error by arbitrarily picking and choosing from the medical evidence to support his conclusion. (Pl.'s Br. 16-17). And, fourth, Plaintiff argues the ALJ committed error by failing to consider his inability to afford medical treatment.

### IV.  Standard of Review

Judicial review of disability claims under the Act is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the

8

decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.  Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## V.  Discussion

### A.   Whether the ALJ Failed to Develop a Full and Fair Record, in Light of an Unrepresented Claimant.

Plaintiff's first argument is that the ALJ had a special duty to develop the record because he was unrepresented at the hearing.  To address this argument, this court must first determine if Plaintiff voluntarily waived his right to counsel, and then determine if the ALJ met his duty to develop the record, or if Plaintiff suffered prejudice from the ALJ's failure to do so.

#### 1.      Plaintiff Waived his Statutory Right to Counsel.

The record conclusively shows that Plaintiff waived his right to representation.  Social Security claimants have a statutory right to be represented by counsel at a hearing before an ALJ. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). Under 42 U.S.C. § 406, a claimant must be notified in writing of his right to counsel, and the possibility of obtaining representation by organizations which provide legal services free of charge. 42 U.S.C. § 406(c). A claimant may waive

his right to counsel.  However, to be effective "such a waiver must establish, at some point, that the claimant is 'properly apprised of his options concerning representation.'" *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982) (quoting *Peppers v. Schweiker*, 654 F.2d 369, 371 (5th Cir. 1981)). Where the notice of the right to representation fails to inform the claimant fully as to the possibility of free counsel and that attorney fees are limited to twenty-five percent of any eventual award, declining representation cannot be construed as an informed and knowing waiver. *Smith*, 677 F.2d at 829.

In this case, there is more than sufficient evidence in the record to conclude that Plaintiff waived his right to representation at the hearing.  The record indicates Plaintiff received at least three notices from the Social Security Administration that included information about his right to representation, the availability of free or low-cost representation, and that fees for representation were limited to twenty-five percent of past-due benefits. (R. 78, 83, 122-23).  The record also shows that Plaintiff appointed a non-lawyer representative to assist in his applications before the SSA. (R. 87) Although this individual withdrew from representation the following year, he did so more than two months before the ALJ hearing, giving Plaintiff a disk containing the full SSA file, and another reminder than he could obtain information on other representatives through the SSA office. (R. 30).

When Plaintiff appeared at the hearing without representation, the ALJ questioned him about whether he wanted to continue.  (R. 36). The ALJ confirmed with Plaintiff that he had received the notices regarding his right to representation at the hearing. (R. 36-37).  The ALJ also confirmed that Plaintiff understood that he could obtain free or low-cost representation, and that the fees that a representative could charge were limited to twenty-five percent of any past-due benefits recovered. (R. 37).  The ALJ then informed Plaintiff of the benefits of representation saying "an attorney or other legally qualified individual can help you to present your case before this Court.   That

10

individual, or individuals, can examine witnesses, submit medical and non-medical records, and also submit legal arguments, either in writing or orally." (R. 37).  The ALJ then confirmed that Plaintiff had received the written notices, understood his right to an attorney, and that he wished to proceed. (R. 37). Thus, Plaintiff waived his right to representation.

### 2.      The ALJ Developed a Full and Fair Record

Having determined that Plaintiff waived his right to representation, the court now turns to considering whether the ALJ developed a full and fair record in support of his determination that Plaintiff was not disabled. In light of Plaintiff's waiver of counsel, the ALJ's duty to develop the record did not arise to a "special duty" and a review of the record shows that there are no evidentiary gaps of the sort necessary to show "unfairness or clear prejudice."

According to the Supreme Court, "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (U.S. 2000).  Where the claimant is unrepresented at the hearing, but has not waived the right to representation, the ALJ's obligation to develop a full and fair record rises to a special duty. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).  This special duty requires a record showing that the claimant was not prejudiced by lack of counsel. *Brown*, 44 F.3d at 935. To meet this heightened duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Smith*, 677 F.2d at 829 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  There must be a showing of prejudice before remand for further development of the record is required. *Brown*, 44 F.3d at 934-35. However, in evaluating prejudice, the court is "not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ." *Id*. (quoting *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981)).  Instead, "[t]he court should be

11

guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). While the ALJ has a special duty to ensure the record demonstrates that an unrepresented claimant who did not waive counsel was not prejudiced by the lack of counsel, the Eleventh Circuit has held that "[b]y implication, where counsel has been waived, the special duty to develop the record does not take effect." *Robinson v. Astrue*, 235 Fed. Appx. 725, 727 (11th Cir. 2007). Since Plaintiff had waived his right to attorney representation, the ALJ's duty to develop a full and complete record did not rise to the "special duty" owed to unrepresented claimants who do not waive their rights.

Plaintiff asserts that the ALJ failed to develop a full and complete record, in part due to the failure to re-contact the provider of the sleep study Plaintiff alluded to in his discussions with Dr. Saxon and in his testimony. Under the provisions of 20 C.F.R. § 416.912(d) the ALJ is required to develop a claimant's complete medical history for at least the twelve months preceding the month in which the application was filed, and to make every reasonable effort to help a claimant get medical reports from their own medical sources when permission is given. "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Robinson*, 235 Fed. Appx. at 727. Under the provisions of 20 C.F.R. § 404.1512(e)(1), the ALJ should re-contact a treating physician "[w]hen the evidence . . . receive[d] from [the] treating physician . . . is inadequate . . . to determine whether [a claimant is] disabled."

The claimant in *Robinson*, presented a case similar to this one. The claimant had waived his right to counsel, and thus the ALJ did not have a special duty to develop the record. *Id*. Although there were medical records missing from the file, the ALJ had never promised to obtain them on behalf of the claimant. *Id*. Thus, despite the ALJ's duty to develop the medical history for the

12

preceding twelve months, the court held the ALJ had not failed in his duty to develop the record because the claimant "bore the ultimate burden of producing evidence in support of his claim." *Id*.

Just as in *Robinson*, the ultimate responsibility for providing evidence of disability rests with Plaintiff.  Although an EEG sleep study was mentioned in the examination by Dr. Saxon and in Plaintiff's testimony, no supporting medical report was submitted. (R. 52, 260).  According to Plaintiff's testimony, the sleep study was conducted "a few years ago" and is thus outside the 12-month window that the ALJ is required to develop. (R. 52).  Additionally, when asked at the hearing if he had additional records or information that he wished the ALJ to consider, Plaintiff replied in the negative.  (R. 39).  The ALJ did, however, order consultative medical exams.  Although Dr. Saxon did not perform an EEG, he did take Plaintiff's reports of seizures into consideration when determining his limitations.  (R. 261).  Specifically, Dr. Saxon's report said "because of his seizure disorder [Plaintiff] could not perform a job that would involve driving or working at heights, in an exposed position, or working around machinery where a seizure and a fall might present the possibility of harm to himself or others." (R. 261).  Thus, although the ALJ did not follow-up on the reports of an EEG sleep study conducted some years in the past, he requested a consultative medical examination under 20 C.F.R. § 404.1512(f) which included physical limitations meant to address the seizure disorder and these limitations were incorporated in the ALJ's final decision on Plaintiff's RFC. (R. 5).

The ALJ also properly developed the record by questioning Plaintiff about the conditions which kept him from working. This line of questioning involved the nerve damage to his hand, seizures, and back problems. (R. 48-61).  The ALJ questioned Plaintiff closely on each of these conditions including frequency and duration of the symptoms, aggravating factors, medications, and how long he could perform various functions with the limitations imposed by the conditions.  He

asked about Plaintiff's ability to walk, sit, stand, and lift various weights.  He offered Plaintiff an opportunity to supplement this information with additional testimony or evidence.  He questioned Plaintiff about his daily routine and how his medical conditions impacted those activities.

In addition to Plaintiff's testimony, the record contains medical evidence provided by Plaintiff and by the consultative medical and psychological exams ordered by the ALJ to supplement the medical record.  The ALJ then incorporated the analysis of the consultative medical reports and Plaintiff's testimony into hypotheticals presented to the VE.  Thus, the record does not contain the sort of evidentiary gaps necessary to show "unfairness or clear prejudice." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

**B.      Whether the ALJ Committed Error by Failing to Properly Consider Plaintiff's Subjective Pain Complaints.**

Plaintiff's second argument is that the ALJ improperly dismissed subjective testimony about the pain and limitations he suffers as a result of his underlying medical conditions. On the contrary, in determining whether the subjective testimony of Plaintiff lacked credibility, the ALJ cited specific examples of inconsistencies between Plaintiff's statements to various physicians, his statements in the hearing, and his admitted activities, thus meeting the burden of "substantial evidence" necessary for this court to affirm the ALJ's findings.

When a claimant attempts to show disability through the use of subjective pain or other symptoms, the court applies a three part pain standard.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  The determination of whether a medical condition can reasonably be expected to give rise to the pain allegations is a question of fact subject

14

to the substantial evidence standard of review. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988). In determining whether the pain standard is met, the credibility of the claimant's testimony must be considered.  *Id*. If proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  *Foote v. Chater*, 67 F. 3d 1553, 1561 (11th Cir. 1995).  The reasons for discrediting pain testimony must be based on substantial evidence. *Hale v. Bowen*, 831 F. 2d 1007, 1012 (11th Cir. 2007).  Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988).

The ALJ found that there was evidence of an underlying medical condition capable of producing pain, but that the objective evidence did not support Plaintiff's alleged severity of pain from these conditions.  However, Plaintiff offered subjective evidence of his pain and limitations arising from his conditions, which the ALJ was required to consider and accept, or explicitly reject. In this case, the ALJ was very explicit in finding that Plaintiff's subjective complaints of pain and disability were less than credible "in light of medical reports, clinical findings on examination, statements from attending practitioners, and his own admitted activities of daily living." (R. 20)  In considering the limitations claimed by the chainsaw injury to Plaintiff's upper extremity, the ALJ pointed out that Plaintiff had not sought any treatment related to this injury during the covered time period, and had continued to work for nearly a decade following the injury at exertional levels greater than the limits imposed by the decision.  (R. 20).  The ALJ found this evidence strongly suggested the injury "d[id] not impose disabling restrictions or prevent[] light work which allows for occasional[] pushing and pulling with the upper left extremity."(R. 20)

In determining that Plaintiff's complaints regarding the seizure disorder were not entirely credible, the ALJ pointed out the inconsistent statements made by Plaintiff regarding this condition. (R. 20-21). The ALJ noted that Plaintiff had not even mentioned his seizure disorder when being treated for chest pain in August 2007. (R. 20-21)  At his first examination by Dr. Klaiss, eight days after his alleged onset date of disability, Plaintiff stated he "used to have seizures but hasn't had any in at least five years." (R. 256).   Three weeks later, after filing for disability benefits, Plaintiff returned to Dr. Klaiss, reporting he had "a couple of seizures in the last month." (R. 21, 253).  In the medical examination performed by Dr. Saxon just two months later, Plaintiff reported "three or four seizures during the daytime" during the past 12 months with urinary incontinence, tongue biting, post-event confusion and retrograde amnesia.  (R. 21, 260). He also reported a past history of night-time seizures. (R. 260). Two days later, in his interview with the consultant psychologist, Plaintiff reported "several seizures and dizzy spells occurring weekly." (R. 268).  In his testimony before the ALJ, Plaintiff reported seizures "on and off, since [19]77" and that the seizures occurred in his sleep and resulted in fatigue the following day. (R. 52).  Thus, at various times throughout the proceeding, Plaintiff alternatively described suffering no seizures for at least five years, daytime seizures, or nighttime seizures.  In addition, the ALJ noted that despite the seizure condition, Plaintiff continued to drive four to five times per week, including to the hearing, as well as participating in motorcycle rides. (R. 18, 22).   Based on these inconsistencies, the ALJ determined Plaintiff's subjective testimony on the severity of his seizure condition was less than credible. (R. 21).

In considering Plaintiff's subjective testimony about his back pain, the ALJ noted that the medical evidence, including X-rays, revealed only mild degenerative disc disease, which was treated by a non-narcotic medication similar to ibuprofen. (R. 21).  Upon examination by Dr. Saxon, Plaintiff had reported pain intensity only occasionally of 5-6/10, and only sometimes in his legs. (R. 21, 260).

16

The ALJ considered Plaintiff's testimony in the hearing, where he stated he "can lift or carry 25 to 30 pounds without aggravating pain symptoms" which was less than the exertional limits in the decision. (R. 21, 59-60).  The ALJ also considered that, according to his testimony, Plaintiff has continued to engage in such activities as helping clean another person's house, yard work, carpentry, laundry, and vehicle repair. (R. 21-22).  When questioned about his current pain at the hearing, Plaintiff replied, "Right now, it's not all that bad." (R. 58).  Based on the combination of medical evidence and Plaintiff's own testimony of his ability to engage in various activities, the ALJ found Plaintiff's subjective pain testimony less than entirely credible and that the evidence "casts doubt on his allegations to the extent he alleges an inability to perform within the parameters of the residual functional capacity described." (R. 21).

Thus, for each of these conditions, the ALJ described with some detail the basis for rejecting Plaintiff's subjective testimony.  The ALJ's decision to discount the subjective testimony and base his decision on the objective medical evidence was supported by substantial evidence.

## C.   Whether the ALJ Committed Error by Arbitrarily Selecting Facts from the Medical Evidence.

Plaintiff's next complaint is that the ALJ was selective in choosing medical evidence from the record.  Specifically, Plaintiff cites the ALJ's reliance on the report from Dr. Saxon, but failure to include reference to nighttime seizures. (R. 260).  Plaintiff also cites the ALJ's failure to include in his decision that Dr. Patterson's examination noted Plaintiff can do heavier chores "as his physical condition allows" and that "physical complaints serve to limit activities [Plaintiff] wishes to perform." (R. 268).

It is well settled in this jurisdiction that the ALJ is not required to cite every piece of evidence in the record.  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of

17

evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court] to conclude that [the ALJ] considered [Plaintiff's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553,1561 (11th Cir. 1995)).  Thus, the test is not whether the ALJ's decision is a meticulous accounting of every piece of evidence, but whether the ALJ referenced the record in a fair and balanced manner that did not misrepresent the evidence.

In support of his allegations that the ALJ committed error by "picking and choosing" among the medical evidence, Plaintiff cites *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992).  However, that case is clearly distinguishable from the present case. In *Marbury*, the ALJ dismissed  strong medical evidence of the claimant's peptic ulcer and seizure disorder.  The record in that case showed hospitalization, radiology reports, and a diagnosis of "long-standing history of peptic ulcer disease with multiple ulcerations" with no record of resolution of the condition. *Marbury*, 957 F.2d at 840. Additionally, the ALJ in that case improperly dismissed the claimant's seizure disorder as "questionable" despite strong objective medical evidence to the contrary.  *Id.*  Importantly, dismissing these complaints, the ALJ in *Marbury* then failed to take the claimant's conditions into consideration when determining his RFC. *Id.* at 839.

Additionally, plaintiff cites *Cowart v. Schweiker*, 662 F.2d 731(11th Cir. 1981) in support of his argument.  The full text of the material quoted is as follows:

> The decision states only that the ALJ "has carefully considered all of the testimony . . . and exhibits . . . and has given weight to each as he feels should be properly accorded to it." This statement tells us nothing whatsoever[. I]t goes without saying that the ALJ gave the testimony the weight he believed should be accorded to it. What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has

18

> given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Cowart*, 662 F.2d at 735 (internal quotations omitted).  In that case, the ALJ made no indication whatsoever as to which evidentiary items had been accorded weight in the decision.  Thus, the issue in that case was not whether the ALJ had sufficiently described the record in his decision, but that he had given no indication at all of the basis for his decision.

In this case, Plaintiff alleges only that the ALJ failed to document Dr. Saxon's notation of his report of nighttime seizures (R. 260) and Dr. Patterson's notations that he performed heavier chores "as his condition allowed" and that "physical complaints serve to limit activities he wishes to perform." (R. 268).  This failure to mention these specific notations from the examination in his written decision does not indicate that the ALJ was "arbitrarily picking and choosing portions of the medical evidence." (Pl. Br. 17).  Moreover, the record evidence here is distinguishable from that in *Marbury* by its very nature.  In *Marbury* the evidence that was dismissed was objective medical evidence supporting the claimant's condition and pain.  Here, the specific quotes are statements Plaintiff made to the examiners, not the medical or psychological opinions of the examiners themselves.  Notably, in his report, the psychologist, Dr. Patterson says "[a] qualified medical professional more appropriately addresses further comment on his physical limitations. . ." (R. 268).  And, in summarizing his findings Dr. Patterson said, "[Plaintiff] related several chronic physical complaints that should be addressed by medical professionals." (R. 271).  In the summary, Dr. Saxon includes an assessment of chronic mechanical back pain and seizure disorder. (R. 261).  He further concluded "[Plaintiff] has some marked limitations. . . . because of his seizure disorder he could not perform a job that would involve driving or working at heights, in an exposed position, or working around machinery where a seizure and a fall might present the possibility of harm to himself or

others." (R. 261). This restriction imposed by Dr. Saxon was incorporated into both the ALJ's hypothetical questioning of the Vocational Expert (R. 65) and in the final decision. (R. 23) ("[Plaintiff] retains the residual functional capacity to perform light work which allows . . . no unrestricted heights, no operation of hazardous machinery, no driving. . .").

Despite the quoted material that Plaintiff alleges was not properly considered by the ALJ, it is clear from the restrictions imposed in the decision that the ALJ did indeed take into consideration the medical findings of both experts, although he did not include Plaintiff's statements to the examiners in his summary of facts.  Additionally, the ALJ affirmatively stated the great weight he placed in these two assessments (R. 23), and when considering Plaintiff's mental capacity assigned greater weight to the non-examining assessment which was more restrictive than Dr. Patterson's. (R. 24).  Dr. Patterson concluded "[o]verall, [Plaintiff's] psychiatric symptomatology should not preclude him from functioning appropriately in a work environment.  Specifically, his symptoms do not limit his abilities to: understand and remember directives, respond appropriately to supervision, and complete two-step tasks." (R. 270-71).   The non-examining psychologist, on the other hand, concluded "[Plaintiff] would be able to carry out simple instructions but not detailed ones." (R. 296). When formulating his findings, the ALJ used this more restrictive analysis of the non-examining psychologist ("[Plaintiff] retains the residual functional capacity to perform light work which allows . . . simple, repetitive, non-complex tasks . . .") (R. 25).  Thus, it is clear that the ALJ viewed the medical evidence as a whole, and in a way that did not disfavor Plaintiff.  The lack of cited quotes in the decision reflects the ALJ's determination of the best manner to summarize the factual background when writing his decision, not a specific desire to exclude evidence favorable to Plaintiff. The ALJ committed no error by failing to quote or list in his decision Plaintiff's statements to the consultant examiners.

**D.      Whether the ALJ Committed Error by Failing to Consider Plaintiff's Inability to Afford Medical Treatment.**

Plaintiff's final argument on appeal is that the ALJ "placed heavy emphasis on Beyser's 'lack of treatment'" when making his credibility determination.  (Pl. Br. 18).  Although the ALJ did note lack of treatment as an element of his credibility finding, and this court itself has questions about the logic of that finding, this was not the sole basis for the ALJ's decision, and in fact, there is substantial evidence beyond non-compliance to support the ALJ's finding.

The Eleventh Circuit recognizes poverty as a reason for non-compliance with a prescribed treatment regimen.  *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (stating that the Eleventh Circuit "agree[d] with every circuit to consider the issue that 'poverty excuses non-compliance.'").  *See also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986)("A claimant may not be penalized for failing to seek treatment she cannot afford"); *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986) ("the ALJ must consider a claimant's allegation that he has not sought medical treatment or used medications because of a lack of finances").

The Commissioner claims that Plaintiff's ability to obtain care from the Whatley (free) Clinic and emergency room is evidence that "his contentions regarding inability to afford treatment [are] without merit." (Resp. Br. 8).  While it is true that a poor claimant may be able to receive periodic care at a free clinic or emergency room for acute conditions, that is not necessarily the same as the access and care that would be available to treat chronic conditions if not limited by ability to pay.

However, while questioning the Commissioner's assertion that sporadic access to a free clinic and emergency room care renders Plaintiff's inability to afford regular treatment a non-issue, this court nevertheless still holds that the ALJ did not improperly use Plaintiff's lack of treatment to reject his claims.  While it is true that the ALJ did note the lack of treatment for Plaintiff's alleged disabling

21

conditions, it is an exaggeration to say that the ALJ placed "heavy emphasis" when he also cited inconsistencies in Plaintiff's testimony, statements to physicians, and his continuing activities as a reason for his determination that Plaintiff was not wholly credible.

In his analysis of Plaintiff's claim, the ALJ noted "[Plaintiff's] description of his underlying impairments and resulting limitations is not fully credible in light of the medical reports, clinical findings on examination, statements from attending practitioners, and his own admitted activities of daily living." (R. 20). The ALJ then considered each ailment in turn. In considering Plaintiff's the injury to his upper left extremity, the ALJ noted that the medical record reflects "no actual treatment, which appears inconsistent with allegedly disabling symptoms and limitations arising from this condition." (R. 20). The ALJ then noted that the accident resulting in this injury occurred approximately ten years before and had not prevented Plaintiff from working for the following nine to ten years at exertional levels greater than that found in his decision. (R. 20). In the medical record, Plaintiff's arm injury is mentioned only as past medical history in his visits to Dr. Klaiss at the Whatley Clinic. (R. 256) There is no evidence from the medical record that Plaintiff complained of pain, or sought treatment related to this past injury. (R. 253, 256). Thus, while actively seeking medical treatment for other conditions, this injury apparently posed no problem for Plaintiff at the time.

In considering Plaintiff's seizure disorder, the ALJ noted Plaintiff had not "received the type of medical treatment one would expect for a totally disabled individual with seizure disorder." (R. 20). Again, the failure to seek treatment was not the only basis for the ALJ's conclusion that Plaintiff's complaints of pain and limitation were not entirely credible. The ALJ noted that Plaintiff's seizure-causing injury had occurred more than thirty years ago, in 1977, and since that time he had continued to work. (R. 20). The ALJ also noted that when Plaintiff sought treatment for chest pains

22

in August 2007, he failed to mention a history of seizures.  (R. 20, 246).  Although Plaintiff did mention a past history of seizures to Dr. Klaiss at his first visit, at that time he claimed that he had no seizures for the previous five years. (R. 256). It was only after filing for disability that he reported to Dr. Klaiss that he was suffering seizures.  (R. 21, 253).  Plaintiff then gave conflicting statements to Dr. Klaiss and the consultative examiners about the frequency and timing of his seizures. (R. 21, 253, 260, 268).  Finally, the ALJ also noted that Plaintiff continued to drive four to five times per week. The ALJ determined that the combination of "almost no treatment, regular driving, and inconsistent complaints" led him to question the reliability of Plaintiff's allegations about his seizure disorder. (R. 21).   However, despite his doubts, "out of an abundance of caution," the ALJ incorporated Plaintiff's seizure disorder in his opinion as to Plaintiff's RFC. (R. 21).

Finally, in considering Plaintiff's back pain, the ALJ again cited "the lack of treatment" for the condition. (R. 21).  However, the ALJ also noted that in his examination by Dr. Saxon, Plaintiff reported pain intensity "only occasionally 5-6/10" and "only sometimes" in his legs. (R. 21). According to the objective medical evidence, there was "only *mild* degenerative disc disease"(emphasis in original) which was treated with non-narcotic pain relievers. (R. 21)  Finally, the ALJ cited Plaintiff's own testimony that he could lift or carry 25 to 30 pounds. (R. 21, 60).

Thus, in addition to the "lack of treatment" there is other objective and testimonial evidence which supports the ALJ's conclusion that Plaintiff retains the capacity to work within the RFC defined.  This is sufficient to meet the standard of "substantial evidence" to support the ALJ's decision.

23

## VI. Conclusion

In accordance with the aforementioned, the court finds the ALJ's determination that Plaintiff is not disabled is due to be affirmed.  An order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___10th___ day of May, 2012.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE